316 F.3d 867
 Harvey MADISON; Doris Madison; Charles d'Autremont; Elena d'Autremont; Harrison Saunders, Plaintiffs-Appellants,
v.
Patrick J. GRAHAM, Director, Montana Department of Fish, Wildlife & Parks; State of Montana Department of Fish, Wildlife & Parks; Stan Meyer, Commissioner; David Simpson; Charles Decker, Commissioner; Darlyne Dasher; Tim Mulligan, Commissioner, Defendants-Appellees.
Montana Coalition for Stream Access (MCSA); Montana Wildlife Federation; Montana Chapter of Trout Unlimited (MTU); Fishing Outfitters Association of Montana (FOAM), Defendants-Intervenors-Appellees.
 No. 01-35145.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 6, 2002.
 Filed December 23, 2002.
 
 S. Amanda Koehler, Mountain States Legal Foundation, Denver, CO, for the appellants.
 Brian M. Morris, Soliciter, Montana Department of Justice, Helena, MT, for the defendants-appellees.
 James H. Goetz, Bozeman, MT, for the intervenors-appellees.
 Appeal from the United States District Court for the District of Montana; Charles C. Lovell, District Judge, Presiding. D.C. No. CV-00-00018-CCL.
 Before TROTT, T.G. NELSON and THOMAS, Circuit Judges.
 OPINION
 TROTT, Circuit Judge.
 
 
 1
 Harvey and Doris Madison, Charles and Elena d'Autremont, and Harrison Saunders (collectively "appellants") appeal from the district court's published decision dismissing their complaint with prejudice. The appellants sought to have Montana's Stream Access Law, Mont.Code Ann. §§ 23-2-301, et seq., declared unconstitutional on the grounds that it (1) violated their Fourteenth Amendment substantive due process rights, and (2) was void for vagueness. The district court held that (1) the appellants' substantive due process claim was in reality a Fifth Amendment takings claim, and (2) the appellants failed to properly challenge the statute on vagueness grounds. Accordingly, the district court dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[2]
 
 
 2
 * Because this case was dismissed for failure to state a claim, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the appellants. Am. Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002). The facts of this case are fully arrayed in the district court's opinion. See Madison v. Graham, 126 F.Supp.2d 1320, 1322-23 (D.Mont.2001). We repeat only the facts necessary to understand the disposition of this case.
 
 
 3
 In 1985, the Montana Legislature enacted the Montana Stream Access Law. The law provides that "all surface waters that are capable of recreational use may be so used by the public without regard to the ownership of the land underlying the waters." Mont.Code Ann. § 23-2-302(1). The appellants' properties are crossed by streams which are non-navigable but are capable of recreational use. Under Montana law, the appellants own the streambeds underlying those streams. Mont.Code Ann. §§ 23-2-309, 22-2-322, 70-16-201. The general public uses those streams and streambeds for various recreational purposes, but under the Montana Stream Access Law the appellants are unable to restrict the public's use.
 
 II
 STANDARD OF REVIEW
 
 4
 A dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo. Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir.2000).
 
 III
 DISCUSSION
 A. Substantive Due Process v. Takings
 
 5
 The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The appellants alleged in their complaint that enforcement of the Montana Stream Access Law violates their substantive due process rights by infringing upon their liberty interests and fundamental rights, and they strenuously protest the construction of their complaint as a takings claim.
 
 
 6
 A close inspection of the complaint, however, reveals that the harms allegedly caused by the Montana Stream Access Law result from the appellants' inability under the law to exclude others from their property.[3] Thus, the issue we address is whether a claim that a statute precludes private property owners from excluding others from their property must be analyzed under the Fifth Amendment's Takings Clause, or whether the analysis falls under the more generalized notions of substantive due process. We hold that the claim falls under the Takings Clause.
 
 
 7
 The United States Supreme Court has declared that the right of landowners to exclude others from their property represents "one of the most essential sticks in the bundle of rights that are commonly characterized as property." Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 433, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). The appellants recognized this well-established principle in their complaint, stating that "[t]he power to exclude others is the hallmark of a private property interest, an essential component of private property rights."
 
 
 8
 This court has previously held that claims alleging governmental interference with property rights fall under the Fifth Amendment's Takings Clause. Armendariz v. Penman, 75 F.3d 1311, 1324 (9th Cir.1996) (en banc). Applying the principles announced by the Supreme Court in Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989),[4] we held that because the "Takings Clause provides an explicit textual source of constitutional protection against private takings, the Fifth Amendment (as incorporated by the Fourteenth), not the more generalized notion of substantive due process, must be the guide in reviewing the plaintiffs' claim of a private taking." Armendariz, 75 F.3d at 1324 (internal quotation marks omitted).
 
 
 9
 Since deciding Armendariz, this court has consistently held that substantive due process claims are precluded where the alleged violation is addressed by the explicit textual provisions of the Fifth Amendment's Takings Clause. See, e.g., Esplanade Properties, LLC v. City of Seattle, 307 F.3d 978, 983 (9th Cir.2002) (affirming dismissal of federal substantive due process claim); Macri v. King County, 126 F.3d 1125, 1129 (9th Cir.1997) (stating that appellants cannot sidestep Armendariz by re-characterizing their claim as lying solely in substantive due process).
 
 
 10
 The appellants contend that because they seek only declaratory and injunctive relief their claim cannot be understood as a takings claim. This contention is without merit. Landowners are allowed to seek such equitable relief in order to resist takings that threaten to violate the Constitution. See Daniel v. County of Santa Barbara, 288 F.3d 375, 384-85 (9th Cir.2002) (reviewing a takings claim seeking injunctive and declaratory relief).
 
 
 11
 The appellants contend also that Armendariz has no precedential value (1) after the Supreme Court's decision in Eastern Enterprises v. Apfel, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), and (2) because Armendariz addressed a "private" taking, not a public taking. However, we recently held in Esplanade Properties, 307 F.3d at 982-83, a public takings case, that Eastern Enterprises did not undermine the precedential value of our holding in Armendariz. We explained:
 
 
 12
 In [Eastern Enterprises], a majority of the Court held that the Coal Industry Retiree Health and Benefit Act ("Coal Act"), 26 U.S.C. §§ 9701-9722 (1994 ed. and Supp. II), which established a mechanism for providing health benefits to coal industry retirees and their dependents, was unconstitutional. The plaintiff asserted that the Coal Act violated its substantive due process rights and constituted a taking of property in violation of the Fifth Amendment. Eastern Enters., 524 U.S. at 517, 118 S.Ct. 2131, 141 L.Ed.2d 451. Justice O'Connor, writing for four Justices, held that the Coal Act violated the Takings Clause, but explicitly declined to address "Eastern's due process claim." Id. at 538, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451.
 
 
 13
 * * *
 
 
 14
 [O]f the five Justices constituting the majority, only Justice Kennedy, in concurrence, addressed the due process claim, and he addressed it to the exclusion of the takings claim. The four Justices in dissent decided that the plaintiff had neither a takings claim nor a substantive due process claim. For that reason alone there exists no conflict between the reasoning of the Court in Eastern Enterprises and our holding in Armendariz.
 
 
 15
 Id. (internal citation omitted).
 
 
 16
 Because the right to exclude others is a private property right, appellants have alleged harms addressed exclusively by the Fifth Amendment's Takings Clause. Because the "Takings Clause provides an explicit textual source of constitutional protection" of private property rights, "the Fifth Amendment (as incorporated by the Fourteenth), not the more generalized notion of substantive due process, must be the guide in reviewing the plaintiffs' claim." Armendariz, 75 F.3d at 1324. However, in light of the appellants' steadfast disclaimer that they do not rely on the Takings Clause as the predicate for this lawsuit, we do not construe their claims as takings claims. This leads to the inevitable conclusion that not only did the appellants fail adequately to allege a substantive due process claim, but also that the district court correctly dismissed their complaint with prejudice.
 
 B. Void-for-Vagueness
 
 17
 The appellants argue that the Montana Stream Access Law is unconstitutionally vague because the state legislature chose to address the legality of portage around artificial barriers in the streams but not the legality of portage around natural barriers. The district court held that the appellants void-for-vagueness claim failed (1) because a vagueness challenge is not proper when the legislature merely failed to enact a law, and (2) because the appellants "failed to allege in their complaint that there are any natural barriers within their streambeds that cause recreationalists to portage beyond the ordinary high water mark." Madison, 126 F.Supp.2d at 1327. We address only the second reason.
 
 
 18
 "It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975). In ruling on the motion to dismiss, the district court acted within its discretion in refusing to consider facts asserted in an affidavit presented by the appellants.[5] Isquith v. Middle S. Utils., Inc., 847 F.2d 186, 193 n. 3 (5th Cir.1988). The appellants' failure to allege the existence of natural barriers in the streams crossing their property precludes their vagueness claim. Even if they had alleged proper facts, we see nothing vague about the statute. The state legislature simply decided not to address the issue of natural barriers.
 
 CONCLUSION
 
 19
 The appellants alleged facts that give rise only to a takings claim. Their attempt to avoid "takings" analysis by labeling the claim as substantive due process does not change the claim's nature. The right to exclude others from private property is a property right addressed by the Takings Clause of the Fifth Amendment. Under the principles adopted in Armendariz and its progeny, the appellants cannot bring a substantive due process claim for the harms they alleged. The appellants likewise have failed properly to plead the facts necessary to support their void-for-vagueness claim. The district court correctly dismissed the appellants' complaint with prejudice.
 
 
 20
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 The district court found several other grounds for dismissal of the substantive due process claim; however, we need not address them because of our disposition of this case
 
 
 [2]
 Defendants contend that the district court lacked jurisdiction under theRooker-Feldman doctrine. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). However, none of the plaintiffs in this litigation, save one, were parties to the relevant state proceeding. "The Rooker-Feldman doctrine does not bar the exercise of federal court jurisdiction when the federal court litigant was not a party to the state court action." Southern California Edison Co. v. Lynch, 307 F.3d 794, 805 (9th Cir.2002) (citing Johnson v. De Grandy, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)). Thus, neither the district court nor this Court lacks jurisdiction over the claims of those plaintiffs who were not parties to the earlier state action.
 
 
 [3]
 The relevant portions of the complaint allege:
 ¶ 23. Plaintiffs have suffered and continue to suffer from impaired property values.... [T]he recreational value of the property is impaired. For more than 25 years ... Mr. Saunders and his family leased the right to use the stream and the streambed on his property for $4000 up to $11,500 per year. As a result of the Stream Access Law, Mr. Saunders is no longer able to earn this substantial amount toward his retirement from use of his property by others.
 ¶ 24. Plaintiffs may not exclude others from their property nor prevent others from recreating on their property near their home, buildings, and livestock....
 ¶ 25. Plaintiffs have lost the inalienable right to acquire, possess, and protect property....
 ¶ 26. Plaintiffs have been subject to frequent and repeated trespasses on their properties, which the State is unable to stop or prevent due to the remote nature of the properties. Plaintiffs have also suffered and continue to suffer, among other harms, disturbance of livestock, garbage left on the property, harassment or interference with Plaintiffs' attempts to use their own property, and urination and other acts of defecation on the property.... In addition, stream users build campfires and prepare meals, subjecting Plaintiffs' private property to the risk of forest and grass fires.
 * * *
 ¶ 29. .... The d'Autremonts' property has been and continues to be the subject of advertisements and profit for a neighboring outfitter. Outfitting businesses and others regularly benefit financially from use of the Madisons' and Mr. Saunders' properties.
 
 
 [4]
 The Supreme Court reviewed an excessive use of force claim against police officers and held that "because the Fourth Amendment provides an explicit textual source of constitutional protection ... [the Fourth] Amendment, not the more generalized notion of `substantive due process,' must be the guide for analyzing these claims."Graham, 490 U.S. at 395, 109 S.Ct. 1865.
 
 
 [5]
 The affidavit declared that the bank on one side of the stream was 100 feet tall, but did not allege the existence of any barrier within the streambed