**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DOUGLAS D. CLEGHORN,
individually, on behalf of other
similarly-situated persons and on
behalf of the public,
              *Plaintiff-Appellant,*

                  v.

BLUE SHIELD OF CALIFORNIA, dba
CareAmerica,
              *Defendant-Appellee.*

No. 03-55528

D.C. No.
CV-02-00852-DOC

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
February 10, 2005—Pasadena, California

Filed May 23, 2005

Before: Harry Pregerson, William C. Canby, Jr., and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Canby

## COUNSEL

Sharon J. Arkin, Robinson, Calcagnie & Robinson, Newport Beach, California, for the plaintiff-appellant.

Gregory N. Pimstone, Terri D. Keville, Manatt, Phelps & Phillips, LLP, Los Angeles, California, for the defendant-appellee.

## OPINION

CANBY, Circuit Judge:

We are presented once again with a question concerning the degree to which the federal Employee Retirement Income Security Act ("ERISA") preempts state law. Douglas D. Cleghorn is a participant in his employer's ERISA health plan offered by Blue Shield of California (doing business as CareAmerica) ("Blue Shield"). On one occasion he sought and received emergency medical services and Blue Shield denied reimbursement. Cleghorn sued Blue Shield in California state court, asserting state-law causes of action and alleging that Blue Shield had violated an emergency care provision in section 1371.4(c) of the California Health and Safety Code.

Blue Shield removed the case to federal court and the district court held that Cleghorn's claims were preempted by ERISA. When Cleghorn declined to amend his complaint to allege an ERISA claim, the district court dismissed his complaint for failure to state a claim. We affirm the judgment of the district court.

## I.  Background

Through his employer, Cleghorn became a member of a Blue Shield health plan.[1] He subsequently sought and received emergency medical care for an episode of dizziness, imminent loss of consciousness, weakness, muscle fatigue, and nausea. Cleghorn submitted a reimbursement claim to Blue Shield for the emergency care he received.

Blue Shield denied Cleghorn's claim on two grounds based on the terms of the plan: (1) Cleghorn's condition did not meet the criteria for emergency care;[2] and (2) the emergency treatment was not approved by Cleghorn's primary care physician or by the health plan.[3] Cleghorn filed state law claims in Orange County Superior Court on behalf of himself, all others similarly situated, and the general public. The claims were brought under the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.* Cleghorn requested general damages, injunctive relief, disgorgement of illegally-gained profits, and punitive damages.

All of the claims were based on Cleghorn's allegation that Blue Shield's emergency care policy violated section 1371.4(c) of the California Health and Safety Code:

---

[1]In reviewing the district court's dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, we accept for purposes of appeal the facts as alleged in Cleghorn's complaint. *See Johnson v. California*, 207 F.3d 650, 653 (9th Cir. 2000).

[2]Blue Shield's coverage plan provides that: "Emergency services . . . are covered only in a medical emergency . . . If emergency room or urgent care services are used for a condition which is not an emergency, the services are not covered and you will be liable for all charges."

[3]Blue Shield's plan provides that emergency care is covered "only if approved in advance by a [Blue Shield] physician."

> [A] health care service plan may deny reimbursement to a provider for a medical screening examination in cases when the plan enrollee did not require emergency services and care and the enrollee reasonably should have known that an emergency did not exist. A health care service plan may require prior authorization as a prerequisite for payment for necessary medical care following stabilization of an emergency medical condition.

Cleghorn asserted that this statute required Blue Shield to cover emergency treatment whenever the insured "reasonably believes that an emergency exists" and that a requirement of pre-authorization in such cases is forbidden.[4]

Blue Shield removed the action to federal court on the ground that Cleghorn's state-law causes of action were completely preempted by ERISA. *See Aetna Health Inc. v. Davila*, 124 S. Ct. 2488, 2494-96 (2004) (upholding ERISA preemption as a ground for removal). Cleghorn then amended his complaint to delete his individual claims for damages under CLRA and filed a motion to remand. The district court denied Cleghorn's motion to remand, concluding that Cleghorn's claims were preempted. Cleghorn declined the opportunity to amend his complaint to include claims under ERISA's civil enforcement scheme. The district court thereupon dismissed the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cognizable cause of action.

## II. Standard of Review

We review de novo a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Madison v. Graham*,

---

[4]Blue Shield contests Cleghorn's interpretation of section 1371.4(c), but our disposition of the preemption issue makes it unnecessary for us to resolve that dispute.

316 F.3d 867, 869 (9th Cir. 2002). We also determine de novo whether ERISA preempts state law causes of action. *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 937 (9th Cir. 2003).

## III. Discussion

**[1]** There are two strands to ERISA's powerful preemptive force. First, ERISA section 514(a) expressly preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan[,]" 29 U.S.C. § 1144(a), but state "law[s] . . . which regulat[e] insurance, banking, or securities" are saved from this preemption. 29 U.S.C. § 1144(b)(2)(A).

**[2]** Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a). A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a). *See Davila*, 124 S. Ct. at 2498 n.4. It is this second strand of ERISA's preemptive force that precludes Cleghorn's action.

**[3]** Section 502(a) of ERISA provides, among other things, that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan. . . ." 29 U.S.C. § 1132(a). When Cleghorn sought benefits under the plan and did not receive them, he did not pursue his ERISA remedy but instead brought the present state-law claims. These are precisely the kind of claims that the Supreme Court in *Davila* held to be preempted. In *Davila*, the plaintiffs were denied coverage or reimbursement for certain medical services by their ERISA plan administrators. They similarly declined to pursue their ERISA remedies and instead brought state tort claims to enforce duties of care imposed by state statutes. *See Davila*, 124 S. Ct. at 2499. The Supreme Court held that the state causes of action were pre-

empted even though: (1) they were tort claims (unlike ERISA claims), (2) they were based on an external state statutory duty, and (3) they did not duplicate ERISA remedies. *See id.* at 2498-99. As the Court summarized: "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Id.* at 2499-2500; *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987) (noting that the "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."); *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1147 (9th Cir. 2003) (holding that an action "which seeks non-ERISA damages for what are essentially claim processing causes of action[ ] clearly falls under the § 1132 preemption exemplified by *Pilot Life*."); *Dishman v. UNUM Life Ins. Co.*, 269 F.3d 974, 983 (9th Cir. 2001) (ruling that "[c]laimants simply cannot obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.").

**[4]** Cleghorn argues that his claims no longer implicate ERISA because he amended his complaint to delete his individual claim. Artful pleading does not alter the potential for this suit to frustrate the objectives of ERISA. The only factual basis for relief pleaded in Cleghorn's complaint is the refusal of Blue Shield to reimburse him for the emergency medical care he received. Any duty or liability that Blue Shield had to reimburse him "would exist here only because of [Blue Shield's] administration of ERISA-regulated benefit plans." *Davila*, 124 S. Ct. at 2498. Even the class claim does not aid Cleghorn, for he is a participant in an ERISA plan and brings his action on behalf of others similarly situated. Cleghorn's claim therefore cannot be regarded as independent of ERISA.

The argument most forcefully urged by Cleghorn on appeal is that his suit is, at least in part, a pure citizen's action to enforce section 1371.4(c) of the California Health and Safety Code, which may apply across the board to all health providers, not just ERISA plans. Cleghorn contends that such a claim is not subject to preemption under our decision in *Washington Physicians Service Ass'n v. Gregoire*, 147 F.3d 1039 (9th Cir. 1998). We reject both the argument and the applicability of *Washington Physicians Service.*

**[5]** We have to deal with the complaint as it was when the district court dismissed it, not as it may be affected by concessions presented on appeal. As we have said, the factual basis of the complaint, even for the public claims, was the denial of reimbursement of plan benefits to Cleghorn. The relief sought on the claims most strongly argued to survive preemption included restitutionary relief, disgorgement of profits, injunctive and other equitable relief, and attorneys' fees.[5] On this record, the district court did not err in concluding that applying these remedies to Blue Shield conflicted with ERISA's exclusive enforcement scheme and that the state-law claims were therefore preempted.

*Washington Physicians Service* was a very different case from this one. There we dealt with a statute that required every health *carrier* to provide, in any plans it delivered or renewed, that services covered by the plan could be provided by every category of health care providers within their areas of competence (thus permitting coverage for services of "alternative" medical providers). *See id.* at 1042. A group of health maintenance organizations and health care service contractors sued to prevent application of the statute on the ground that it was preempted under the explicit preemption provision of ERISA, section 514(a). We held that the statute did not "operate directly on" ERISA plans, but merely regulated "one of many products that an employee benefit plan

---

[5]A third claim sought punitive damages.

might choose to buy." *Id.* at 1044-45. We therefore concluded that the statute did not "relate to" an ERISA plan within the meaning of section 514(a). *Id.* at 1045.

[6] We need not address whether California's different statute, as applicable to ERISA plans, operates directly on such plans and therefore "relates to" them, because we are not relying for our decision on preemption under section 514(a).[6] Whether or not section 1371.4(c) of the California Health and Safety Code may be applicable to ERISA plans, it may not be enforced against an ERISA plan by way of this lawsuit asserting state-law causes of action against Blue Shield because of its denial of ERISA plan benefits. Congress's exclusive and comprehensive civil enforcement scheme of section 502 preempts any such state-law causes of action. *Washington Physicians Service* does not affect this conclusion, because it did not involve an attempt to enforce state-law causes of action against ERISA plans or their administrators or fiduciaries. *Washington Physicians Service* accordingly did not deal with section 502(a) preemption at all.

## IV. Conclusion

[7] Cleghorn's state-law causes of action against Blue Shield, arising from Blue Shield's denial of benefits under an ERISA plan, conflict with the exclusive civil enforcement scheme established by Congress in section 502(a) of ERISA. The state law claims are preempted for that reason. We

---

[6]For the same reason, we need not decide whether California's section 1371.4(c) is excepted from preemption under section 514(b)(2)(A) as a state regulation of insurance. *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 334 (2003). Preemption under ERISA section 502(a) is not affected by that exception. "Under ordinary principles of conflict preemption . . . even a state law that can arguably be characterized as 'regulating insurance' will be pre-empted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme." *Davila*, 124 S. Ct. at 2500.

accordingly affirm the judgment of the district court dismissing Cleghorn's complaint.

**AFFIRMED.**